1128

## FALCON COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 92001.   Promulgated May 14, 1940.

*Leonard M. Levy, Esq.*, and *Warner Evans, Esq.*, for the petitioner. *James H. Yeatman, Esq., M. L. R. Wade, Esq.*, and *James L. Backstrom, Esq.*, for the respondent.

1130

1132

OPINION.

BLACK: The issue to be decided is whether the sale of the eight oil and gas leases in question to the East Texas Oil Refining Co. was a sale by petitioner, or whether the sale was made by petitioner's stockholders for their own account.

Petitioner claims that the transactions, as intended by the parties and as actually recorded by the minutes of the corporation and by

the documentary evidence which evidences the transactions, show that the sale was made by the stockholders after they became the owners of the leases in their own right and that the profit, if any, is taxable to the stockholders and not to petitioner. It relies chiefly upon *Chisholm* v. *Commissioner*, 79 Fed. (2d) 14.

The respondent contends that the sale was made by the corporation, or if not by the corporation itself, then by its stockholders as agents for the corporation, and cites the case of *Nace Realty Co.*, 28 B. T. A. 467, as a case almost exactly in point.

We think petitioner must be sustained, on authority of the *Chisholm* case. See also *Conservative Gas Co.*, 30 B. T. A. 552, and *Grand Rapids Trust Co. et al., Administrators*, 34 B. T. A. 170. In the *Chisholm* case, the facts were briefly as follows: Taxpayers (George and Harry Chisholm) each owned 300 shares of the Houde Engineering Corporation. On September 26, 1928, taxpayers and certain other stockholders of Houde for a valuable consideration gave Krause & Co. the right for a period of 30 days to purchase all the stock of Houde for $4,000,000 in cash. On October 11, 1928, taxpayers were advised by letter from Krause & Co. "that we elect to exercise our option as of this date * * *." On October 20, 1928, the taxpayers, the two Chisholm brothers, executed an agreement of partnership between themselves, to commence on October 22, 1928, and continue for ten years. The capital contribution of each partner was stated as 300 shares of Houde stock. The assignments of the stock to the partnership were made expressly subject to the option. On October 24, 1928, the partnership received payment for the stock. The partnership remained in existence and did not distribute any of the proceeds to the partners. On these facts the Board decided for the Commissioner but was reversed by the Second Circuit, and the Supreme Court denied certiorari, 296 U. S. 641.

In the instant case a brief résumé of the facts shows that the petitioner, Falcon Oil Co., was the one-half owner of a seven-eighths working interest in four certain oil and gas leases in which East Texas was the owner of the other one-half working interest. Petitioner was the part owner of two other leases in which a partnership by the name of Bass & Dillard owned an interest and East Texas also owned an interest. Petitioner was also the owner of a seven-eighths working interest in two other leases in which no one else held any interest except the owner of the one-eighth overriding royalty.

Petitioner on February 3, 1934, received an offer from the Tide Water Oil Co. to purchase these eight leases for a consideration of $1,005,200 in cash and $265,000 to be paid out of oil, if and when produced from the leases. This offer included not only petitioner's interest in the leases but also the interests of Bass & Dillard and East Texas.

On February 8, 1934, this offer was submitted by petitioner's vice president, Herbert, to Bass & Dillard and East Texas to find out whether they wanted to join petitioner in a sale or to elect to purchase under certain options contained in prior agreements. The nature of these options is fully set out in our findings of fact. In pursuance of giving further consideration to Tide Water's offer to purchase, petitioner's directors and stockholders held conferences at petitioner's office in Fort Worth, Texas, at one of which they received report of tax counsel to the effect that a large tax would be due the Federal Government if petitioner made a sale to Tide Water. After considerable discussion these directors and stockholders definitely decided that petitioner would not sell to Tide Water, but instead would distribute in liquidation to its stockholders its interest in the eight leases in question. It was estimated that petitioner's interest in the eight leases in question constituted 60 percent of its total assets and that 60 percent of each stockholder's stockholdings should be turned in for cancellation and retirement in consideration for the liquidating dividend in question. This plan was carried out in the manner agreed upon, which is detailed in our findings of fact. Petitioner is still in existence and active in business, but with a capital stock reduced to 40 percent of what it was prior to the liquidating dividend in question. Petitioner has declared several cash dividends since that time, always on the basis of its reduced capital stock.

After the distribution by petitioner to its stockholders of its interest in the eight leases in question, these stockholders, through Herbert, notified East Texas at its office in Dallas, Texas, of what had been done. Herbert also informed East Texas that the four parties to whom the leases had been assigned by the corporation were willing to sell to East Texas for the same consideration offered by Tide Water. Thereupon, Freeman W. Burford, president of East Texas, addressed an acceptance of this offer to the four stockholders who had received the leases in liquidation, agreeing to purchase the leases at the same price previously offered by Tide Water. This acceptance was conditioned upon the parties entering into a formal contract of purchase and sale, satisfactory to all parties.

The evidence further shows that immediately thereafter the attorneys representing the four stockholders who had received the leases in liquidation and attorneys representing East Texas were set to work to draw up the required contract of purchase and sale. After consultation between the attorneys extending over a period of several days, the contract was drawn and signed by all parties thereto on March 2, 1934.

On March 15, 1934, the formal assignments and conveyances of the eight leases in question were executed by Venita S. Weaver, Roy D.

Golston, the Herbert Oil Co., and the First National Bank of Fort Worth, Texas, as trustee, as sellers, to East Texas, as purchaser.

Each seller received a separate check payable to him for his part of the consideration and deposited it to his own bank account and never in any way turned it over to petitioner, or used it for petitioner's benefit. Under these circumstances we see no reason to hold that the sale was made by petitioner and the profits therefrom taxed to it. On the contrary, we think that under authority of *Chisholm* v. *Commissioner*, *supra*, *Conservative Gas Co.*, *supra*, and *Grand Rapids Trust Co.*, *supra*, we should, and do, hold that the sale was not made by petitioner but was made by the four named parties to whom the leases were distributed in liquidation, and the profits resulting from the sale are taxable to them and not to the petitioner.

As has already been stated, the Commissioner urges *Nace Realty Co.*, *supra*, as the case most nearly in point to the facts of the instant case. In that case, the taxpayer was an Ohio corporation. All its stock was owned by two Nace brothers. In 1921 the brothers transferred to the corporation as paid-in capital or surplus a 99-year lease, renewable forever on Inlot #491, which lease carried with it an option to purchase the fee for $55,000 upon 60 days' notice. On August 26, 1926, the Nace Realty Co., granted to the Postmaster General of the United States an option to purchase prior to December 1, 1926, the fee simple to Inlot #491 for $150,000, which option the Postmaster General assigned to Jacob Kulp. On November 24, 1926, the corporation joined in a four-party agreement with Kulp as purchaser, Harvey Cashott, who owned property adjoining Inlot #491, as a vendor, and a bank as trustee. Under this agreement the Nace Realty Co. and Cashott agreed to sell their respective properties to Kulp, each at the price of $150,000 cash, to be paid upon delivery of proper deed. Conveyances were to be made within 60 days, and unrestricted possession given Kulp immediately. Kulp deposited $30,000 with the bank, to be returned to him should the vendors fail to carry out the transaction. On January 3, 1927, but effective from January 7, 1927, the lease on Inlot #491 was reassigned by the Nace Realty Co. to the Nace brothers for a consideration of $12,061.36. On January 7, 1927, the Nace brothers delivered to Kulp an assignment of the lease to Inlot #491, and received Kulp's check for $95,000, $12,061.35 of which was paid to the corporation. Kulp in a separate transaction on December 16, 1926, and January 7, 1927, acquired the fee to lot #491 from the heirs of the original grantor for $55,000. On these facts we held that the corporation had already entered into a binding contract of sale prior to the assignment by it of the lease to the two Nace brothers, and that, in consummating the sale which the corporation was already legally bound itself

by contract to make, the Nace brothers were merely acting as agents for the corporation, the Nace Realty Co. Other cases cited by respondent: *Hellebush* v. *Commissioner*, 65 Fed. (2d) 902; *Burnet* v. *Lexington Ice & Coal Co.*, 62 Fed. (2d) 906; *Taylor Oil & Gas Co.* v. *Commissioner*, 47 Fed. (2d) 108; *James Duggan*, 18 B. T. A. 608; *S. A. Macqueen Co.* v. *Commissioner*, 67 Fed. (2d) 857; *Will T. Caswell*, 36 B. T. A. 816; and *Tazewell Electric Light & Power Co.* v. *Strother*, 84 Fed. (2d) 327, are distinguishable on similar grounds.

The court in *Chisholm* v. *Commissioner*, *supra*, distinguishes this same line of cases on the same ground as we have here given. So did the Board in *Conservative Gas Co.*, *supra*.

Respondent in his brief lays considerable stress on several letters written by East Texas to petitioner and vice versa after the date of the consummation of the sale, which were introduced in evidence on behalf of the respondent. Respondent calls attention to the fact that references in these letters were to "your transaction with us", "your recent transaction with us", "regarding our recent transaction with you", etc. From these expressions in the letters, respondent argues that the parties themselves considered that the transaction was between petitioner and East Texas and that the stockholders never became the owners of the leases.

We admitted these letters in evidence because we thought they were relevant to the issue to be decided. We still think so. We do not think, however, that the expressions in these letters are sufficient to overcome the documentary evidence in the record which shows that the sale was not made by petitioner and that it was not intended that petitioner should make the sale.

Herbert, vice president of petitioner, testified that all the letters written on behalf of the stockholders after the sale had been consummated were sent in the name of the Falcon Co. merely for convenience, because they all had their offices together in the same building, and that the correspondence had theretofore been carried on in the name of the Falcon Co. and it was continued in this manner for the convenience of the parties as to the few items that had yet to come up for consideration in one way or another.

For reasons already stated, we sustain petitioner in the only issue left for our decision, all other issues having been either abandoned or agreed upon.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

TURNER dissents.